**RECEIVED**

OCT 13 2022

**U.S. Court of Appeals
Eighth Circuit-St. Paul, MN**

**FILED**

OCT 13 2022

**U.S. Court of Appeals
Eighth Circuit-St. Paul, MN**

UNITED STATES COURT OF APPEALS

FOR THE EIGHTH CIRCUIT

No. 22-3031

United States of America,

Plaintiff-Appellee

v.

Paul R. Hansmeier,

Defendant-Appellant.

Appeal from the United States District Court for the District of Minnesota

(16-cr-334-JNE)

APPELLANT'S OPENING BRIEF

Dated: October 10, 2022

Paul R. Hansmeier
20953-041 Unit F
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072

## SUMMARY OF THE CASE

This is an appeal from the district court's order denying Appellant Paul Hansmeier's motion for a preliminary injunction. The order was entered by the United States District Court for the District of Minnesota in Hansmeier's 28 U.S.C. § 2255 proceeding on September 6, 2022. This timely appeal followed.

# TABLE OF CONTENTS

Page

Summary of the Case     i

Jurisdictional Statement     <u>1</u>

Statement of the Issues     2

Statement of the Case     3

Argument     8

   I. The district court abused its discretion by applying the     8
     incorrect legal standard to Hansmeier's motion for a preliminary injunction.

   II. Had the district court applied the correct legal standard, then it would     12
     have granted Hansmeier's motion for a preliminary injunction.

     A. Hansmeier has a likelihood of success on the merits because     15
       the scheme alleged in the indictment does not come within the scope
       of the federal mail-wire fraud statutes.

     B. Hansmeier has a likelihood of success on the merits because     21
       the mail-wire fraud statutes violate the First Amendment as
       applied to Hansmeier

Appellate Case: 22-3031    Page: 3    Date Filed: 10/13/2022 Entry ID: 5208097

Page

    C. Hansmeier can establish a likelihood of success on the    24
       merits based on the significant structural flaws in these
       proceedings.

III. Requested Relief    26

Conclusion    28

Certificate of Compliance    30

Certificate of Service    31

Appellant's Addendum    —

# TABLE OF AUTHORITES

Page

*United States v. Hansmeier,*     2
      988 F.3d 428 (8th Cir. 2021)

*United States v. Jain,*     16
      93. F.3d 436 (8th Cir 1996)

*Principal Sec., Inc. v. Agarwal,*     2
      23 F.4th 1080 (8th Cir. 2022)

*New York State Rifle + Pistol Assn, Inc. v. Bruen,*     21
      142 S. Ct. 2111 (2022)

*I.S. Joseph Co. v. Lauritzen A/S,*     19
      751 P.2d 265 (8th Cir. 1984)

*Dataphase Sys., Inc. v. Agarwal,*     2
      640 F.2d 109 (8th Cir. 1981) (en banc)

# JURISDICTIONAL STATEMENT

Defendant - Appellant Paul Hansmeier was charged by indictment filed in the United States District Court for the District of Minnesota, No. 16-334 (D. Minn.) (DCD 1). Hansmeier is the movant in a motion filed pursuant to 28 U.S.C. § 2255.

The Honorable Joan N. Ericksen, United States District Court Judge, presided over all proceedings relevant to this appeal, including Hansmeier's motion for a preliminary injunction in his 28 U.S.C. § 2255 proceeding.

The district court entered its denial of Hansmeier's motion on September 6, 2022, (DCD 241). Hansmeier's notice of appeal was timely under FRAP 4(a). This Court has jurisdiction to decide the present appeal under 28 U.S.C. § 1292(a)(1), as it is an interlocutory order of a United States District Court refusing an injunction.

# STATEMENT OF THE ISSUES

I. District courts abuse their discretion when they apply the wrong legal standard to an issue that is before them. The district court evaluated Hansmeier's motion for a preliminary injunction under the legal standard applicable to bail motions instead of the legal standard applicable to motions for a preliminary injunction. Did the district court abuse its discretion in doing so?

Most apposite authorities speaking to this issue—

- Principal Sec., Inc. v. Agarwal, 23 F.4th 1080, 1083 (8th Cir. 2022)
- Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981).

II. Hansmeier's motion for a preliminary injunction raises issues whose resolution in Hansmeier's favor requires the straight-forward application of controlling precedent. Does Hansmeier's showing establish a likelihood of success and otherwise meet the requirements for preliminary injunctions?

Most apposite authorities speaking to this issue—

- United States v. Jain, 93 F.3d 436 (8th Cir. 1996)
- I.S. Joseph Co. v. Lauritzen A/S, 751 F.2d 265 (8th Cir. 1984)
- New York State Rifle & Pistol Assn., Inc. v. Bruen, 142 S.Ct. 2111 (2022)
- United States v. Hansmeier, 988 F.3d 428 (8th Cir. 2020)

## STATEMENT OF THE CASE

Paul Hansmeier is an attorney who has been imprisoned for over three years based on his association with a politically toxic form of litigation known as "Copyright trolling." So-called copyright trolls purchase copyrights, upload the works to notorious piracy websites and sue people who pirate the works. According to the U.S. Attorney for the District of Minnesota's theory of the case, "Copyright trolling" violates the federal mail fraud and wire fraud statutes, unless the copyright troll affirmatively discloses his status as a copyright troll. Specifically, Hansmeier was charged with mail and wire fraud offenses based on allegations that he failed to affirmatively disclose his investigative methods and his financial interest in the outcome of the cases. The indictment also alleged that Hansmeier brought meritless "hacking" cases.

There are certain, substantial, issues with this theory of fraud. First, it lacks a coherent theory of "intent to harm" which this Court has held is the essence of mail fraud and wire fraud. Second, every federal appellate court to

address the issue has held that allegations of fraudulent litigation activity

are categorically outside the scope of the mail and wire fraud statutes. Third,

imprisoning attorneys under criminal statutes that have not been traditionally applied

to litigation activity raises glaring First Amendment issues —particularly in light of

the Supreme Court's recent <u>Bruen</u> decision.

Hansmeier has been raising these challenges to his fraud charges for a

half decade. Those challenges have not been rejected; rather, they have yet to

receive a ruling.

Hansmeier is currently pursuing relief under a 28 U.S.C. § 2255

motion. In his motion, Hansmeier is raising these three points, among others.

Because these issues are capable of being resolved as a matter of law and

because, if resolved in Hansmeier's favor, those issues would result in the

vacatur of Hansmeier's conviction, Hansmeier has filed a motion for a preliminary

injunction under Rule 65 of the Federal Rules of Civil Procedure, which is made applicable to section 2255 proceedings by Rule 12 of the Rules Governing 2255 Proceedings. In his motion, Hansmeier sought transfer to home confinement while the district court evaluated Hansmeier's 2255 motion.

Hansmeier argued his motion for a preliminary injunction under the legal standard applicable to such motions: (1) likelihood of success on the merits; (2) irreparable harm; (3) absence of harm to the non-moving party; and (4) the public interest. Without providing advance notice of its intent to do so, the district court converted Hansmeier's motion for a preliminary injunction into a motion for bail and held that Hansmeier's motion (which did not anticipate this conversion) did not meet the meet the standard applicable to motions for bail — which, according to the district court, would have required Hansmeier to show a substantial federal constitutional claim that presents a

clear case on the law and facts and extraordinary circumstances that warrant

his release on bail. The district court's order was a summary denial, so it is

unclear whether the district court considered any of the issues that have

gone unaddressed for a half decade. Nor is it clear what the district

court considers to be a "clear case on the law and facts" or "extraordinary

circumstances," because there is no analysis in the order.

      To summarize Hansmeier's predicament: Hansmeier has been imprisoned

for over three years based on allegations that he failed to affirmatively

disclose his status as a copyright troll in copyright enforcement litigation.

There are substantial jurisdictional and constitutional issues that remain unaddressed,

notwithstanding a half decade's-worth of litigation. Hansmeier filed a motion

for a preliminary injunction to address his wrongful imprisonment (from Hansmeier's

perspective, at least), but the district court converted the motion into a motion

for bail and denied it based on Hansmeier's failure to meet a legal standard that Hansmeier was not trying to meet. Moreover, the district court provided no advance notice of its decision to convert Hansmeier's motion and its denial order provided no analysis to aid this Court's appellate review. These circumstances set the table for Hansmeier's arguments on appeal.

## SUMMARY OF ARGUMENT

The district court abused its discretion by applying the incorrect legal standard to Hansmeier's motion for a preliminary injunction. Had the district court applied the correct legal standard, then it would have granted Hansmeier's motion. This latter point is true because Hansmeier's position finds direct support in Supreme Court and Eighth Circuit precedent. The Court should order the district court to evaluate Hansmeier's motion under the Dataphase factors or perform the analysis itself and order that Hansmeier's

## ARGUMENT

I. The district court abused its discretion by applying the incorrect legal standard to Hansmeier's motion for a preliminary injunction.

Motions for a preliminary injunction are an established feature of 2255 practice. The mere fact that the relief requested in a motion for a preliminary injunction may overlap (or at least rhyme) with the relief requested in a motion for bail is not a sufficient reason to sua sponte convert a motion for a preliminary injunction into a bail motion. Conversion was improper and the district court abused its discretion by applying the incorrect legal standard to Hansmeier's motion for a preliminary injunction.

Motions for a preliminary injunction are an established feature of 2255 practice. 28 U.S.C. § 2255 proceedings are vehicle for federal prisoners to raise constitutional and similarly serious challenges. 2255 proceedings are civil proceedings and are governed most specifically by the Rules Governing

2255 Proceedings. Rule 12 of these rules incorporates the Federal Rules of Civil Procedure to the extent that the rules of civil procedure do not conflict with the 2255-specific rules. As Hansmeier reads the Rules Governing 2255 Proceedings, there is no rule that conflicts with Rule 65 of the Federal Rules of Civil Procedure, which governs preliminary injunction practice, so preliminary injunction motions are a part of 2255 proceedings.

Without acknowledging this point, the district court construed Hansmeier's motion for a preliminary injunction as a motion for bail and evaluated Hansmeier's motion under a legal standard stated in a case decided in the 1980's. As an initial point, the Rules Governing 2255 Practice do not contain a provision for bail and neither, of course, do the Federal Rules of Civil Procedure. The district court thus substituted an old and arguably abrogated, unenumerated standard to replace the modern, specifically enumerated preliminary injunction standard. Moreover, the district court's only stated

basis for doing so was the similarity between the relief that Hansmeier sought in his

preliminary injunction motion and the relief available in motions for bail. There is no

obvious logic to this rationale.

Most claims in civil proceedings seek money damages, yet we

would not accept a district court construing a claim for negligence as an

intentional tort and then dismissing the claim based on the plaintiff's failure

to allege that the defendant acted with a culpable state of mind. This is true

even though both claims might seek money damages. Nor would we accept

a district construing a motion for sanctions under 28 U.S.C. § 1927 based

on vexatious litigation conduct as a motion for sanctions under Rule 11 of the

Federal Rules of Civil Procedure and then denying the § 1927 motion based on

the movant's "failure" to meet Rule 11's safe harbor requirements — even if

both motions seek an award of attorneys' fees. The only circumstances that occur to

Hansmeier in which courts are permitted to reconstrue filings is in the helpful manner associated with the liberal construction of pro se filings or the neutral-to-harmful manner associated reconstruing filings as 2255 motions when neccessary to give effect to the rule that a prisoner receives a single bite at the post-conviction apple. In the event where a court takes the latter potentially harmful step, it must provide the affected party with notice of its intent and an opportunity to withdraw.

    The lack of any apparent logic for the district court's action and the lack of historical examples for what the district court did both fatally undermine the district court's action. The district court should have evaluated Hansmeier's motion for a preliminary injunction under the standard applicable to such motions instead of the amorphus, poorly developed standard applicable to motions for bail. The district court erred as a matter of law by failing to do

so and thus abused its discretion. <u>Koon v. United States</u>, 518 U.S. 81, 100 (1996).

II. Had the district court applied the correct legal standard, then it would have <u>granted Hansmeier's, motion for a preliminary injunction.</u>

  A party moving for a preliminary injunction bears the burden of showing that a preliminary injunction is warranted. A district court must consider:

(1) : likelihood of success on the merits; (2) irreparable harm to the movant;

(3) whether the balance of harms favors the non-movant; and (4) the public interest.

While none of these factors is dispositive, a preliminary injunction will rarely be warranted in the absence of a likelihood of success on the merits. A "likelihood of success on the merits" requires the movant to show at least a fair chance (or that it is more likely than not) of prevailing. <u>Kroupa v. Nielsen</u>, 731 F.3d 813, 818 (8th Cir. 2013). Notably, this "more likely than not" standard is far more forgiving than the "substantial federal constitutional claim that

presents a clear case on the merits" standard applied by the district court.

If Hansmeier can establish a likelihood of success on the merits than it cannot reasonably be contested that the remaining three showings, i.e., irreparable harm, balance of interests and the public interest, are also made. This is because Hansmeier's showing of a likelihood of success on the merits would establish a greater than even chance that Hansmeier is wrongfully imprisoned (irreparable harm); moreover, other than the conviction at issue in Hansmeier's section 2255 motion, Hansmeier has zero criminal history, was granted release on a signature bond for 2½ years with zero incidents and self-surrendered to begin his 14 year term of imprisonment. Accordingly, there are no public safety or other concerns that might warrant against transfer to home confinement (balance of interests/public safety). Indeed, Hansmeier works outside of prison walls, is eligible for transfer to the fenceless, country club-like setting of federal prison camp

and has a home just 90 minutes South of Sandstone, MN. In this era of carjackings, it is difficult to imagine a serious public policy rationale for occupying scarce prison bed space (at great taxpayer expense) with lawyers based on allegations of professional misconduct. If the Court agrees that Hansmeier has a greater than even chance of success on the merits, then nothing warrants against transferring Hansmeier to home confinement.

As for likelihood of success on the merits, Hansmeier's 2255 motion raises 18 separate grounds, which fall into three separate categories: (1) the scheme alleged in the indictment is something other than federal mail or wire fraud; (2) Hansmeier's conviction violates Constitutional provisions; and (3) the district court and subsequent appellate proceedings suffered from structural flaws, arising from the district court's significant involvement with the cases giving rise to Hansmeier's charges and the government's inexperience

with the law of copyright enforcement and counsel's lack of candor with the district court and this Court once their error was realized.

Rather than restate his 2255 motion, Hansmeier will highlight key arguments with an emphasis on arguments that have gone unaddressed for a half decade.

A. Hansmeier has a likelihood of success on the merits because the scheme alleged in the indictment does not come within the scope of the federal mail-wire fraud statutes.

Whatever it is that is alleged in the indictment (and established at the change of plea hearing) it is not mail-wire fraud. This is true because the settling defendants received everything they paid for and because allegations of fraudulent litigation are categorically beyond the scope of the mail-wire fraud statutes.

A scheme involving lies and/or omissions does not come within the scope of the mail-wire fraud statutes absent an allegation that the lies were directed at cheating someone out of what they paid for. If the scheme is to give the

victim everything they paid for, then it is outside the mail-wire fraud statutes.

If the scheme is to give the victim less than what they paid for, then it comes within

the scope of the mail-wire fraud statutes.

Thus, in United States v. Jain, 93 F.3d 436 (8th Cir. 1987), a doctor who

accepted illegal referral kickbacks was innocent of mail fraud because he provided

his patients with the services they bargained for. In United States v. Takhalov, 827

F.3d 1307 (11th Cir. 2016), a bar owner who hired women to lure traveling businessmen

into his establishment was innocent of wire fraud because the businessmen received

the drinks they paid for. In United States v. Sadler, 750 F.3d 585

(6th Cir. 2014), a woman who lied to pharmaceutical distributors and used a fake

name on drug orders was innocent of fraud because she paid for the pills she

ordered. In United States v. Regent Office Supply Co., 421 F.2d 1174 (2d Cir. 1970),

salesmen who lied to prospective customers about being referred by the prospect's

boss were innocent of fraud because they delivered the stationary they were selling. The common thread in these decisions is that the people who were lied to received exactly what they paid for.

The economic transaction at issue in Hansmeier's case was a settlement transaction; the infringers paid Hansmeier to settle/dismiss his claim against them. A fraud claim might lie if there was an allegation that, after accepting a settlement payment, Hansmeier turned around and demanded more money. But nothing like that is alleged in the indictment. All of the lies and ommissions alleged in the indictment go to issues other than the issue of whether the settling defendants got what they paid for. Because the settling defendants received exactly what they paid for, there was no fraud. Whatever it is that the indictment alleges, it is not mail fraud, wire fraud or conspiracy to commit the same. This fundamental defect put the conduct alleged in the indictment beyond the subject matter jurisdiction of the district court. See, e.g. United States v. Peter, 310 F.3d 709

(11th Cir. 2002) (holding that indictment lacking a cognizable scheme to defraud

deprived the district court of subject matter jurisdiction).

 It bears mentioning that, while Hansmeier has been imprisoned for

something that does not come within the statutes of his conviction, other defendants

facing similar circumstances have defeated their mail-wire fraud charges using the

exact argument Hansmeir makes here. _See_, _e.g._, _United States v. Hu_, No. 3:20-

cr-21-TAV-DCP-1, U.S. Dist. LEXIS 171165 (E.D. Tenn. Sept. 9, 2021) (dismissing

fraud charges arising from allegations that a researcher wrongfully obtained funds from NASA

based on his failure to disclose his affiliation with Chinese state owned companies, in

light of the fact that it was undisputed that NASA got exactly what it paid for). The

only difference between Hansmeier and these defendants is that these defendants

have actually gotten a court to decide their argument, whereas Hansmeier has been

waiting a half decade for a ruling.

A separate, but equally potent, problem with the government's theory of mail-wire fraud is that it is rooted in allegations of fraudulent litigation. Yet, every appellate court to consider the issue, including this one, has rejected attempts to criminalize allegedly "fraudulent" litigation. I.S. Joseph Co. v. Lauritzen, 751 F.2d 265, 267-68 (8th Cir. 1984) ("If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary."). See also Kim v. Kimm, 884 F.3d 98, 104 (2d Cir. 2018) (concluding that allegations of frivolous, fraudulent, or baseless litigation activities, such as proffering false affidavits and testimony to a state court, cannot constitute mail fraud and collecting Circuit Court decisions holding the same); United States v. Camick, 796 F.3d 1026, 1214-17 (10th Cir. 2015) (reversing mail fraud conviction arising from allegations of fraudulent litigation). The appellate courts have reasoned that applying the mail-wire fraud statutes to allegations of fraudulent litigation activity would

destroy finality in judicial proceedings, innundate the courts with retaliatory fraud claims and chill access to the courts. On this latter point, chilling access to the courts, by Hansmeier's observation, copyright holders have largely stopped enforcing their rights against Internet piracy in the wake of Hansmeier's prosecution — reasoning, perhaps, that it is better to go out of business than be sent to federal prison for 14 years, as Hansmeier was.

Hansmeier has established a likelihood of success based solely on his "they got what they paid for" and "litigation ≠ fraud" arguments. These arguments are consistent with this Court's prior panel decisions and the uniform decisions of Circuit Courts across the nation. Unless the district court is prepared to defy this Court's precedents or to ignore the arguments, Hansmeier has, at the bare minimum, a likelihood of success on the merits of these arguments.

B. Hansmeier has a likelihood of success on the merits because the mail-wire fraud statutes violate the First Amendment as applied to Hansmeier.

To the extent that the conduct alleged in the indictment comes within the scope of the mail-wire fraud statutes, then those statutes violate the First Amendment as applied to Hansmeier. This is particularly true in light of the Supreme Court's recent decision in New York State Rifle and Pistol Assn. v. Bruen, ___ U.S. ___, 142 S. Ct. 2111 (2022).

In Bruen, the Supreme Court announced a standard for evaluating restrictions on enumerated rights, such as the First Amendment's petitioning right. Under the standard announced in Bruen, when the plain text of an enumerated right covers a person's conduct, the Constitution presumptively protects the conduct. The government then bears the burden of demonstrating that a challenged restriction is consistent with the Nation's historical tradition of regulating that activity. Only if the government meets its burden will the restriction survive.

Though Bruen was decided in the Second Amendment context, the Court expressly stated that its evaluation of a restriction on the Second Amendment right to bear arms "accord[ed]" with its evaluation of restrictions on First Amendment protected activity.

Hansmeier was convicted of conspiracy to commit mail and wire fraud based on allegations that Hansmeier brought meritless claims and lied to courts to conceal the meritlessness of his claims and his involvement with them. Ignoring for the sake of argument the government's significant errors of copyright law that form the basis for these charges, the conduct alleged in the indictment, however distasteful it may be, is protected by the plain text of the First Amendment's Petition Clause. The Petition Clause protects "petition[ing] the Government for a redress of grievances." The Petition Clause is unqualified, meaning that all petitioning activity is protected — meritorious, meritless, truthful, fraudulent and everything else.

The conduct alleged in the indictment is thus presumptively protected by the First Amendment, as the activity comes within the scope of the Petition Clause's plain text — even if counsel for the government believes the activity was "fraudulent."

The remaining question is whether the application of the mail–wire fraud conspiracy statute to litigation conduct is consistent with the Nation's history of regulating petitioning activity. Quite clearly, it is not. Our Nation has never allowed prosecutors to review the claims and defenses raised by parties to litigation to determine whether they have merit or are "fraudulent." Rather, we trust the "time-tested procedures" of the Courts to resolve disputes in litigation by "separating validity from invalidity, honesty from dishonesty." United States v. Pendergraft, 297 F.3d 1198, 1206 (11th Cir. 2002). Or, as this Court has put it, litigation is as "American as apple pie" and "if a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary." I.S. Joseph Co., 751 F.2d at 267-68.

Based on this analysis, there are only two possibilities: the mail-wire fraud conspiracy statute violates the First Amendment as applied to Hansmeier or the conduct alleged in the indictment does not fall within the scope of the statute, the latter being the path taken by every appellate court to consider the issue, including this one. Both paths lead to the invalidation of Hansmeier's conviction. As such, this First Amendment issue is a second reason why Hansmeier can establish a likelihood of success on the merits.

C. Hansmeier can establish a likelihood of success on the merits based on the significant structural flaws in these proceedings.

If nothing else, the government's resort to judicially noticable falsehoods to obtain and defend its conviction — falsehoods which had a demonstrable impact on these proceedings — is an independent reason why Hansmeier's conviction must be vacated. Hansmeier's 2255 motion contains a detailed account of the falsehoods used by counsel for the government to obtain and defend

the conviction. The falsehood Hansmeier highlights here is the government's claim that

Hansmeier was subjected to sanctions and dismissals once courts learned about Hansmeier's

association with the cases and his use of an undercover investigator to ferret out infringers.

This falsehood was expressly relied upon by the Court in its affirmance: "The information

they misrepresented was also material.... Hansmeier [ ] faced dismissals of his lawsuits

and sanctions when the extent of his involvement came to light." Judicial decisions are

public records and the Court may take judicial notice that Hansmeier was never

sanctioned for "concealing" his use of an undercover investigator or for concealing his

involvement in his cases. Indeed, such a result would have been absurd because,

as experienced copyright enforcement practitioners know, "use of... undercover

investigators and the like is routine, and provides no defense." 4-13 Nimmer on

Copyright 13.09[B]; Olan Mills, Inc. v. Linn Photo Co., 23 F.3d 1345 (8th

Cir. 1994)(ordering summary judgment in favor of copyright holder who used enforcement

scheme that was strikingly similar to that used by Hansmeier;)

In short, the government duped the district court and this Court regarding Hansmeier's litigation history and the law of copyright enforcement. The government's deception was judicially noticeable and was material—having been expressly relied upon by this Court in the affirmance. Thus, to the extent the mail-wire fraud statutes actually cover litigation misconduct and to the extent that petitioning activity is not protected by the First Amendment, then Hansmeier is a victim of counsel for the government's mail-wire fraud crimes. Certainly, we cannot have government attorneys resorting to criminal activity to obtain and defend convictions; any convictions obtained by such methods must be vacated in order to maintain public support for the courts.

## III. Requested Relief.

At a minimum, the Court should vacate the district court's order denying Hansmeier's motion for a preliminary injunction and order the district court to evaluate

Hansmeier's motion using the Dataphase factors. The Court should also provide a firm suggestion that the district court avoid use of the summary denial procedure, so as to aid appellate review.

However, the Court can and should go further. Upon reviewing the government's response brief, it will be readily apparent that the government has no meaningful rebuttal to the points made in this brief, including: (1) that the indictment does not allege a fraud offense because the "victims" received exactly what they paid for and because allegations of "fraudulent" litigation are categorically outside the scope of the mail-wire fraud statutes; (2) the conviction violates the First Amendment as applied to Hansmeier; and (3) if nothing else, the government resorted to criminal activity to obtain and defend the conviction. These conclusions are commanded by common sense and the precedents of this Court and the Supreme Court. The Court would serve the interests of

judicial by putting the government's theory of fraud out of its misery.

If the Court is left with the conclusion that this case should never have been brought in the first place, then it should exercise its power to summarily vacate Hansmeier's ill-gotten conviction. Hansmeier has waited a half decade (including three years' imprisonment) to have his arguments heard. Justice would be served by ruling on the arguments that other innocent defendants have been successfully using to dispose of liability under the federal fraud statutes while Hansmeier has been burdening the beyond-overburdened Federal Bureau of Prisons with his presence as he awaits a ruling.

## CONCLUSION

Hansmeier filed a motion for a preliminary injunction. The district court recharacterized Hansmeier's motion into something it wasn't and denied the motion that Hansmeier did not bring. Hansmeier's motion met the standard applicable

for a preliminary injunction including a likelihood of success on the

merits. Hansmeier is able to show a likelihood of success on the merits by identifying

at least four ways in which the government has violated this Court's precedents

to obtain and defend their conviction in this case, including: (1) failure to establish

a valid scheme to defraud in light of __Jain__; (2) failure to allege mail-wire fraud in

light of I.S. Joseph; (3) violations of the First Amendment in light of the

Supreme Court's decision in __Bruen__; and resort to activity that is worse than

what resulted in Hansmeier's 14 year term of imprisonment. For all of those reasons

the Court should order the district court to evaluate Hansmeier's motion for a preliminary

injunction as a motion for a preliminary injunction, grant Hansmeier's motion for a

preliminary injunction or summarily vacate Hansmeier's conviction.

October 10, 2022

Paul Hansmeier
20953-041 Unit F
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072

# CERTIFICATE OF COMPLIANCE

This document complies with the type/page/word limit of Federal Rule of Appellate Procedure 32(a)(7)(A) because it less than 30 pages.

October 16, 2022

Paul Hansmeier

# CERTIFICATE OF SERVICE

Appellant Paul Hansmeier hereby certifies that he served a copy of the foregoing on the Clerk of Court for the U.S. Court of Appeals for the Eighth Circuit by depositing a copy of the same in his prison mailbox on October 11, 2022 with first class postage prepaid.

October 11, 2022

Paul Hansmeier